IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES R. ANDERSON    :  CIVIL ACTION
           :
 v.         :
           :  No. 06-2798
DAVID DiGUGLIELMO, et al.   :

## MEMORANDUM

Ludwig, J.                 March 23, 2010

   This is a prisoner civil rights case, 42 U.S.C. § 1983; jurisdiction is federal question, 28 U.S.C. § 1331. According to the complaint,[1] defendants[2] violated plaintiff's Eighth Amendment rights by not responding to his complaints of severe headache more promptly, by transporting him to the medical department in an unnecessarily rough manner, and by delaying his transfer to a hospital. The Commonwealth defendants and medical defendants separately moved for summary judgment. Both motions will be granted for the following reasons.[3]

---

[1] The original complaint was filed pro se. Plaintiff's request for appointment of counsel was granted, and, on March 18, 2008, Duane Morris LLP entered an appearance on his behalf. Counsel filed an amended complaint and engaged in discovery and settlement negotiations. However, in February 2009, plaintiff requested that his counsel be removed "because our positions have become untenable and irreconcilable." Motion for Removal of Counsel or Change of Counsel at 1, docket no. 83. In light of plaintiff's request, Duane Morris requested permission to withdraw, docket no. 84, and on February 26, 2009, was permitted to do so. Docket no. 86. Plaintiff's further request for appointment of different counsel was denied, docket no. 129, and plaintiff has represented himself since that time, including preparation of responses to defendants' summary judgment motions.

[2] Defendants are David DiGuglielmo, Sargeant Richard Paulin, Corrections Officer Ahmed Hannibal, Captain Jerome Strickland, and former DOC registered nurse Sue Findley ("Commonwealth defendants") and Felipe Arias, M.D. and Prison Health Services ("medical defendants").

[3] "Summary judgment is appropriate when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). In

The summary judgment record[4] evinces these facts. Plaintiff has been incarcerated at SCI-Graterford since 1982. Anderson N.T., at 6-7. On May 10, 2005, at about 11 p.m., plaintiff developed a headache while sitting in his cell. His door was locked at the time while staff conducted an inmate count.[5] Id., at 16-19. Plaintiff did not immediately request medical attention because he knew that an officer would soon come by his cell. About ten minutes after the headache began, when Corrections Officer Randall arrived at plaintiff's cell, plaintiff reported having a severe headache. Randall immediately relayed this information to a nurse in the prison medical department, Anderson N.T., at 19; Findley N.T., at 35, who advised the officer to bring plaintiff to the dispensary. Findley N.T., at 22.

Randall's superior, Sergeant Paulin, instructed Randall to continue with the inmate count while Paulin would escort plaintiff to the dispensary. Paulin N.T., at 12, 30. This plan was approved by Captain Strickland, the shift commander. Id., at 13, 30; Strickland N.T., at 23-25. Randall checked on plaintiff twice more during the count, and the second time, plaintiff told her he could not wait. Anderson N.T., at 21-29. Shortly thereafter, plaintiff began to vomit and, not receiving an immediate response to his call for help, smashed the windows on his cell door with

determining whether such relief is warranted, 'the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009) (citations omitted).

[4] The consists of the pleadings, deposition testimony, and documents produced in discovery, including plaintiff's medical records.

[5] Inmate count takes approximately 30-60 minutes to complete and is the process by which the presence of inmates is verified. DiGuglielmo N.T., at 23-26. Inmates are required to remain in the same location during the count, except in an emergency. Id., at 29-32.

a shoe.  Id., at 29-31.  He then began to drift in and out of consciousness.  Id., at 36.

Paulin ordered a wheelchair from the dispensary and, with Officer Hannibal, went to plaintiff's cell.  Paulin N.T., at 31; Hannibal N.T., at 24; Strickland N.T., at 25-26.  As they arrived plaintiff smashed another window, spraying broken glass.[6]  Paulin N.T., at 32, 34; Hannibal N.T., at 25.  The officers ordered plaintiff to lie on the floor as they entered his cell.  Paulin N.T., at 32-33.  They handcuffed him, cleaned him off, and carried him down a nearby stairway and placed him in a wheeled cart.  Hannibal N.T., at 26-30.  A nurse was waiting on the far side of the cell block and up another flight of stairs with a wheelchair.  Plaintiff was placed in the wheelchair,[7] id., at 30-31; Paulin N.T., at 34-36, and taken to the medical department, where he arrived at about 12:05 a.m.  Findley, N.T., at 38.[8]

The on-call doctor, Dr. Arias, prescribed Phenergan for the nausea, Tylenol 3 for plaintiff's pain, and Catapres for his elevated blood pressure.  Findley N.T., 25-27.  The nurse gave plaintiff the medicine and called Arias twice more - at 12:20 a.m. and 12:40 a.m.  He told her to continue the treatment plan and admit plaintiff to the Infirmary, which occurred at 1:30 a.m.  Findley N.T.,

---

[6] Plaintiff admits breaking the windows, but denies the officers' claim that any glass came close to them.  Plaintiff's response at 4, 6.

[7] Plaintiff contends that a wheelchair should have been brought to his cell, that the officers roughly dragged and pulled him out of his cell, and that he banged his head on a radiator while in the cart.  Plaintiff's response at 5.

[8] Plaintiff asserts that his complaints and requests for help were ignored for at least an hour.  Plaintiff's response at 3-5.  However, the nurse's notes of the incident reflect that the first call from Randall was received at 11:15 p.m., the request for a wheelchair was received at 11:35 p.m., and plaintiff arrived at the dispensary and was seen by the nurse at 12:05 a.m.  Exhibit 2 to Findley N.T.

at 27-28, 39-43.

At 8:30 a.m. when Arias arrived, he observed signs of neurological deficit and ordered plaintiff transferred to a hospital. Plaintiff was transferred to Temple University Hospital, and was treated for a subarachnoid hemorrhage. Arias N.T., at 37-39. On May 16, 2006, plaintiff was discharged and returned to SCI-Graterford. Anderson N.T., at 57.[9]

### 1. Commonwealth Defendants

Plaintiff asserts that the prison officers violated his Eighth Amendment rights to adequate medical care by ignoring his serious medical need - specifically, by delaying his transfer to the medical department.

In order to establish a deprivation of a prisoner's constitutional right to adequate medical care, the "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Small v. Gillis, 2006 WL 1737501, at *3 (E.D. Pa., June 22, 2006), quoting Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Here, plaintiff reported that he had a headache - and shortly thereafter, he began vomiting. Viewing these facts in the light most favorable to plaintiff, this constitutes a

---

[9] According to plaintiff's deposition, he had only a "slight recollection" of the events that occurred after he started breaking the windows on his cell door. Anderson N.T., at 42-44. He recalled being "snatched" off the cart and placed in a wheelchair, but nothing further until he woke up at Temple Hospital. Id. He fully recovered from the hemorrhage. Plaintiff's Answer to Interrogatories, ¶ 4.

serious medical need for Eighth Amendment purposes.

Nevertheless, as to deliberate indifference, the record does not present a triable issue. Deliberate indifference "can be found where prison officials 'ignored . . . evidence' of a serious need for medical care or where 'necessary medical treatment is delayed for non-medical reasons." Small, supra, at *3, quoting Natale, 318 F.3d at 582. This record shows that Randall, a corrections officer, shortly after learning of plaintiff's headache, immediately contacted the medical department and spoke to a nurse. Thereafter, two other officers transported plaintiff in a cart part way and a nurse then took him in a wheelchair to the medical department - within less than an hour of his initial complaint.

As to plaintiff's assertion that medical attention was delayed because of the inmate count, this is unsupported by the record. The nurse who was contacted by the corrections officer did not advise that plaintiff's headache was an emergency requiring attention before the completion of count.[10] The officers were entitled to rely on the nurse's professional judgment in this regard. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference"). Once he vomited and broke the windows, the officers, despite the inmate count, had him taken to the medical department.

Plaintiff's contention that defendants DiGuglielmo (the prison superintendent) and

---

[10] This alleged failure is also a basis for plaintiff's Eighth Amendment claim against the nurse. Second Amended Complaint, ¶ 53.

Strickland implemented a policy that did not permit movement of prisoners during an inmate count is similarly unsupported. Instead, the deposition testimony of the Commonwealth defendants was the prison policy allowed movement of prisoners during an inmate count in an emergency. No evidence was to the contrary. DiGuglielmo N.T., 29-32; Strickland N.T., 20-21; Paulin N.T., at 18; Hannibal N.T., at 14.

There appears to be no evidence of deliberate indifference in responding to plaintiff's complaints or in taking him to the medical department - and, therefore, no ground for an inadequate health care claim against the prison officers.

As to defendant Findley, the nurse, the claim is that she violated plaintiff's Eighth Amendment rights by not ordering his immediate transfer from his cell to the medical department and, furthermore, by not having him transferred to a hospital. These claims also are not supported by evidence of deliberate indifference on her part.

The record reflects that upon receiving a phone call from a corrections officer, the nurse directed plaintiff's transfer to the medical department for examination. Upon his arrival, she telephoned her findings to Dr. Arias, the on-call prison physician and followed his treatment directives. Thereafter, she made two follow-up calls to Dr. Arias during the period of about one and a half hours that plaintiff was in her care. There is no evidence that she ignored plaintiff's condition, or delayed treatment.[11]

---

[11] As to the nurse's not ordering his transfer to the hospital, she testified that, where, as here, a doctor was available, she did not have the authority to make that decision. Findley N.T., at 18, 100. That testimony is credible. Ordinarily, only a physician may authorize a hospital admission.

The excessive force claim against defendants Paulin and Hannibal - that their transporting of plaintiff from his cell to the wheelchair was unnecessarily rough, and in particular, their decision to transport him in a cart, these do not amount to a constitutional violation. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). Moreover, a "'de minimis use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind" is not constitutionally actionable Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), quoting Hudson v. McMillan, 503 U.S. 1, 9-10 (1992).

Here, the record shows that defendants Paulin and Hannibal responded to plaintiff's needs, including cleaning and transporting him. Given his smashing windows, their handcuffing him was not unreasonable, nor was the decision to place him in a cart. Moreover, if defendants seemed rough in handling him - for example, in "snatching" plaintiff off the cart to get him to the wheelchair, Anderson N.T., at 43 - there is no evidence that he was thereby harmed. Plaintiff's admittedly "slight recollection" of the period between the officers' arrival at his cell and his arrival at the hospital the next day and the lack of objective evidence of harm undermine his claim of cruel and unusual punishment.

## 2. Medical Defendants

Prison Health Services and Dr. Arias are alleged to have violated plaintiff's Eighth Amendment right to adequate medical care and to have inflicted cruel and unusual punishment. The grounds alleged are that 1) PHS maintained a policy that did not authorize an inmate to be transferred outside the prison for emergency medical care unless the medical director or a doctor

was on-site, and 2) that Dr. Arias knew that delaying transfer of plaintiff to a hospital posed a substantial risk of harm to plaintiff and showed deliberate indifference to his need for prompt medical care.

PHS is a private corporation that contracted with the Commonwealth to provide medical services to prison inmates. It can be held liable for a constitutional violation if it knew of and acquiesced in the deprivation of plaintiff's rights. "[T]he corporation [must have acted], 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] harm.'" Roach v. SCI-Graterford Medical Dept., 398 F.Supp.2d 379, 388 (E.D. Pa. 2005), quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 770, 725 (3d Cir. 1989), cert. denied, 492 U.S. 1044 (1990). The nurse testified that she herself could transfer a patient if she could not reach a doctor. Findley N.T., at 118. This was unrebutted.

The law as to Dr. Arias' liability requires that under the evidence, he was "actually aware of the existence of the excessive risk" posed by a delay in treatment, and that he deliberately disregarded that risk in delaying plaintiff's transfer to a hospital. Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). Negligence alone cannot amount to constitute deliberate indifference. Singletary v. PA Dept. of Corrections, 266 F.3d 186, 192 n.2 (3d Cir. 2002).

Given the nurse's report, Arias directed that plaintiff be admitted to the Infirmary and his course of treatment was carried out. Over time, plaintiff's symptoms subsided - his blood pressure decreased and his vomiting ended. Findley N.T., at 30. In light of this apparent improvement, Dr. Arias saw no reason to transfer him to an outside hospital. Arias N.T., at 31. However, the next morning, when Arias noted symptoms not observed the night before - abnormal speech and

decreased strength on the left side, id., at 39-40, 44-45 - he ordered plaintiff transferred to Temple University Hospital.  Id., at 37, 39.

Plaintiff was unconscious while under Dr. Arias' care and, in any event, did not submit any evidence as to why he should have been transferred to a hospital upon arriving at the medical department.  No material issue has been shown to exist that Dr. Arias knew of "an excessive risk" presented by not transferring plaintiff immediately.

These are the reasons the motion of PHS and Dr. Arias must be granted and judgment entered in their favor.

BY THE COURT:


 /s/ Edmund V. Ludwig
Edmund V. Ludwig, J.